258

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES BLACKWELL, Plaintiff in Error.

*Opinion filed November 30, 1961.*

HARRY B. BAINBRIDGE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Charles Blackwell, was tried by the court without a jury in the criminal court of Cook County under three separate indictments, all of which arose out of the same occurrence. In one indictment he was charged with armed robbery of Sheffield Johnson, in another with armed robbery of Edna Johnson, and in the third indictment with assault with intent to kill Sheffield Johnson. He was found guilty under all three indictments and was sentenced to the penitentiary for concurrent terms of not less than 8 nor more than 12 years. A writ of error has been issued to

review the judgments of conviction, and the sole question presented upon this writ of error is whether the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

Edna Johnson testified that on March 14, 1956, she was home alone in her apartment at about 2:00 in the afternoon. John Blackman, whom she had known for several years, came to her apartment, ostensibly on a social call. While she and Blackman were visiting in the apartment, the door bell rang and when she opened the kitchen door two men, one of who was armed with a gun, entered and told her to go to the living room. The men then tied the hands and feet of Mrs. Johnson and Blackman with a roll of tape and demanded that Mrs. Johnson tell him the combination to her safe, but she told him that she did not know the combination. A few moments later Mrs. Johnson's sister-in-law, Thelma Franks, entered the apartment, and she was also bound by the robbers. A short time later, Mrs. Johnson's husband, Sheffield Johnson, entered the apartment and both of the robbers commenced beating him over the head with a gun and a hammer. Blackman had, by this time, worked himself free from the tape, and Mrs. Johnson asked him to go across the hall and call the police. Blackman went out of the apartment and was not seen again until he was identified by Mrs. Johnson in a police line-up. Mrs. Johnson then freed herself and left the apartment and called the police. When she returned, she found one of the men still beating her husband. She picked up a rifle and her husband took the rifle from her and pointed it at the robbers, who then fled. Mrs. Johnson testified that the robbers took a diamond ring from her husband and also took 7 rings, 2 watches, a pair of earrings and a necklace and about $100 in currency and change. The following night, Mrs. Johnson was called to the police station to view a line-up. She recognized Blackman in the line-up and also recognized the defendant. However, she did not identify the defend-

ant because she said that she had not seen him at her house at the time of the robbery. There was some jewelry at the police station which Mrs. Johnson identified as the jewelry which had been taken from the apartment.

Sheffield Johnson testified that as he entered the apartment, a tall man jumped out of the bathroom and struck him on the head. The tall man was then joined by a shorter man who also commenced beating him. He testified that he recognized the defendant as the short man who had beaten him at the time of the robbery. On cross-examination, he admitted that he had known the defendant for 10 or 11 years, but did not tell the police that defendant was one of the robbers until he saw defendant in narcotics court. The officers told him at that time that they had recovered the stolen jewelry from the defendant and he then told the police that the defendant was the short man who had participated in the robbery and the beating.

Ernest Cox, a tenant in the apartment building where the Johnsons lived, testified that he heard some unusual noises upstairs, and when he went up to investigate, he saw a man standing in the doorway of the Johnson apartment with something in his hand. All he could see was the back of the man and he was unable to identify him. Cox then went downstairs to tell his mother what was going on, and a short time later he saw a man run out of the front door of the building and enter a green two-tone Buick. Cox followed the man and saw him drop a hammer before he got into the car. Cox obtained the license number of the car and when the police arrived, he gave them the number and also told them about the hammer. The hammer was recovered by the police and was identified by Johnson at the trial.

A police officer testified that he checked the license number which Cox had given him and found that it was the number of a car owned by the defendant. He went to the defendant's home on the afternoon of March 14 and waited

for defendant to return. When the defendant returned at about 6:00 P.M. the officer placed him under arrest, searched him, and found a quantity of jewelry. This jewelry was introduced in evidence at the trial and was identified by Mrs. Johnson as the jewelry which had been taken in the robbery. The defendant told the officers that a man known as James Williams from Detroit had given him these rings earlier in the afternoon and had asked him to sell them. The arresting officer also testified that he had been informed that Thelma Franks was an eyewitness to the robbery but that he had made no attempt to talk to her about the case and never brought her to the station to view a line-up.

For the defense, Marian Nanton testified that she had picked up the defendant in her car at about noon on March 14 and testified that she and the defendant were together from that time until about midnight. The defendant testified that he was in Mrs. Nanton's company from about noon on the day in question until late in the evening. He denied being at the Johnson's apartment and denied being in an automobile near the apartment. He admitted that he had the stolen jewelry in his possession at the time of his arrest, but claimed that he had obtained it from James Williams. He claimed, however, that he did not obtain the jewelry until March 15.

The evidence was conflicting and it was the duty of the trial judge, who heard the case without a jury, to resolve the conflict and determine which of the witnesses were telling the truth. Although Mrs. Johnson was unable to identify the defendant, Mr. Johnson positively identified the defendant as one of the men who had beaten him. The fact that he did not immediately tell the police officers that defendant was implicated in the robbery was a circumstance to be considered by the trial judge in passing upon the credibility of Johnson's testimony. The trial judge evidently determined that Johnson's testimony that defendant was one of the rob-

bers was true, in spite of his delayed identification. Having heard and observed the testimony of this witness, the trial judge was in a better position to pass upon the credibility of the testimony and we will not disturb his finding. In addition to the positive identification testimony by Johnson, there is ample evidence that the defendant's car was in the vicinity of the apartment at the time of the robbery and that one of the robbers escaped in that car. The evidence was undisputed that the defendant had most of the stolen jewelry in his possession at the time of his arrest. His explanation of how he obtained possession thereof is entirely unworthy of belief if the testimony of the arresting officer is taken as true, for the officer testified that he arrested the defendant at his home at about 6:00 o'clock on the afternoon of the 14th at which time he had the stolen property in his possession, and the defendant claimed that he was in Mrs. Nanton's company throughout the afternoon and evening of the 14th and did not receive the jewelry until the 15th. If the testimony of the arresting officer was believed by the trial judge he was entirely justified in completely rejecting the testimony of the defendant and Mrs. Nanton.

Under the circumstances presented here, where the evidence is in direct conflict, we will not undertake to pass upon the credibility of the testimony. The testimony of Sheffield Johnson, together with the testimony that defendant's car was used as the get-away car and the undisputed fact that the defendant had possession of the stolen property, was sufficient to establish the defendant's guilt beyond a reasonable doubt. The judgments of conviction are affirmed.

*Judgments affirmed.*